## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____ )
AMY DELA CRUZ, as parent/guardian of )
I.D., )
               Plaintiff, )
    v. )       Civil Action No. 14-293 (AK)
)
DISTRICT OF COLUMBIA, )
            Defendant. )
_____ )

### MEMORANDUM OPINION

This case is pending before the undersigned for all purposes pursuant to the parties'

Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, attached to an April 7,

2014 Notice [10].  Pending before the Court is Plaintiff's Motion for Summary Judgment

("Motion") [15] and Memorandum of Points and Authorities in support thereof

("Memorandum") [15-1], Defendant's Opposition to Motion and Cross-Motion for Summary

Judgment (Cross-Motion") [16], Plaintiff's Reply to Defendant's Opposition and Opposition to

Cross-Motion ("Pl's. Reply") [18] and Defendant's Reply to Plaintiff's Opposition ("Def.'s

Reply") [20].

Plaintiff Amy DeLa Cruz, as parent of I.D., requests from Defendant District of

Columbia ("Defendant" or "the District") a total of $62,997.15 in attorneys' fees and costs

incurred in pursuing an administrative proceeding brought pursuant to the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, *et seq.*  (Memorandum at 3-4, 8.)

Defendant challenges Plaintiff's prevailing party status and the hourly rate applied to Plaintiff's

claims for attorney's fees.  Defendant further asserts that there is a cutoff date on Plaintiff's

claims for attorney's fees, which coincides with the date that a settlement offer was made.

## I. BACKGROUND

Plaintiff DeLa Cruz is the parent of I.D. (hereinafter referred to as "I.D." or "the student"), a minor child who is a student with a disability. (Memorandum at 2.) The IDEA guarantees all children with disabilities a Free Appropriate Public Education ("FAPE"), 20 U.S.C. § 1400(d)(1)(A), and in general, FAPE "is available to all children with disabilities residing in the State between the ages of 3 and 21, . . . ." 20 U.S.C. §1412(a)(1)(A). Defendant District of Columbia is a municipal corporation that operates the District of Columbia Public Schools System ("DCPS"). (Complaint [1] ¶4.) The District receives federal funds pursuant to the IDEA to ensure access to a Free and Appropriate Public Education ("FAPE") and it is obliged to comply with applicable federal regulations and statutes including the IDEA. *See* 20 U.S.C. § 1411.

In the instant case, the student, I.D., was placed at a DCPS special education school ("School A") when he was in first grade and he remained there until he completed eighth grade at the end of School Year ("SY") 2012-2013. (Motion, Exh. 2 [Hearing Officer's Determination] ("HOD") at 2.) The student's IEP that was developed on February 11, 2013, while he attended School A, required a full-time out of general education placement. (*Id.*) The IEP team discussed placement for I.D. for SY 2013-2014, and determined that the student's neighborhood school ("School B") would not be appropriate. (HOD at 2.) In July 2013, however, the District determined that the student would be assigned to School B for SY 2013-2014. (HOD at 2.)[1] Petitioner obtained funding from the District for a comprehensive psychological evaluation of I.D., which was performed in August 2013, and the evaluator

---

[1] In this Memorandum Opinion, "the District" encompasses District of Columbia Public Schools, known as "DCPS."

concluded that I.D. should be placed in a therapeutic school because of his disability classification(s). (*Id*)

Plaintiff DeLa Cruz filed an Administrative Due Process Complaint on August 30, 2013, requesting that the Hearing Officer find that DCPS denied the student's right to a [FAPE] by "fail[ing] to perform necessary evaluations in order to develop an appropriate IEP and provide an appropriate placement,. . ." and "fail[ing] to develop an appropriate IEP on February 11, 2013" and "fail[ing] to provide an appropriate special education placement for SY 2013/14." (Motion Exh.1 [Administrative Due Process Complaint Notice] at 3.)[2] Plaintiff DeLa Cruz sought: 1) funding of an independent speech/language evaluation and independent functional behavioral assessment; 2) placement at and funding for the student at a non-public school such as Accotink Academy or another school identified by the parent. (Exh. 1 at 3.)   At the time the Due Process Complaint was filed, I.D. was not attending any school. (Motion, Exh. 1 at 1.)

At the beginning of SY 2013-2014, the parent was unaware that the District had assigned the student to School B and instead sent I.D. to a private full-time special education school ("School C") with the intent to secure funding from the District.  (HOD at 2.)  The student's behavior made him ineligible to continue at School C and although the parent contacted three other private therapeutic day schools about admission, the student was rejected by all three. (*Id.*)

The Hearing Officer noted that "[a]fter the due process complaint was filed [on August 30, 2013] and subsequent to the first pre-hearing conference being held [,]" [on September 24, 2013] the student was enrolled at School B, but he was suspended shortly thereafter.  (HOD at 3.)  The Due Process hearing was held on October 31, 2013.  "By the date of the due process

---

[2] Plaintiff DeLa Cruz was referred to as Petitioner at the administrative hearing but will be referred to as Plaintiff throughout this Memorandum Opinion.

hearing [,] the parties had not yet convened an IEP meeting to review the student's recent

[psychological] evaluation and review the student's IEP and school placement." (HOD at 3.)

On November 17, 2013, the Hearing Officer issued his HOD finding that Petitioner

sustained her burden of proof on the issue of whether DCPS denied the student a FAPE by

failing to provide an appropriate placement/location of services for SY 2013-14 (HOD at 8.)  The

Hearing Officer further found that Plaintiff "presented insufficient proof that the student's

February 11, 2013 IEP was not based on current evaluations, had an inappropriate disability

classification or had inappropriate goals." (HOD at 7.)

The Hearing Officer ordered DCPS to "convene an IEP meeting to review the student's

recent independent comprehensive psychological evaluation, review and determine the student's

disability classification, review and revise the student's IEP and determine an appropriate

educational placement and location of services other than School B." (HOD at 8.)  The Hearing

Officer further directed the IPE team to "consider and determine whether the student should

simply be provided a day school placement or be referred for and provided a residential

placement due to his severe in school and out of school behaviors."  (*Id.*)

## II. LEGAL STANDARD

### A.  Summary Judgment on an IDEA Claim

A party moving for summary judgment on legal fees must demonstrate prevailing party

status and the reasonableness of the fees requested in terms of hours spent and hourly rate.[3]

Pursuant to Fed. R. Civ. P. 56(a), summary judgment shall be granted if the movant shows that

there is "no genuine issue as to any material fact and the moving party is entitled to a judgment

---

[3] The typical summary judgment standard is inapplicable here because "[t]he IDEA authorizes a court to award fees in its discretion and to base the award on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Parks v. District of Columbia*, 895 F. Supp. 2d 124, 129 (D.D.C. 2012) (citation and internal quotations omitted).

as a matter of law." *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56).  "A fact is material if it 'might affect the outcome of the suit under the governing law' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for a nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson*, 477 U.S. 242, 248 (1986)).

Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The court is required to draw all justifiable inferences in the nonmoving party's favor and to accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  The nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  The non-moving party cannot rely on allegations or conclusory statements; instead, the non-moving party is obliged to present specific facts that would enable a reasonable jury to find it its favor.  *Greene v Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### 1. Prevailing Party Status

The IDEA gives courts authority to award reasonable attorney's fees to the parents of a child with a disability who is the prevailing party.  20 U.S.C. §1415(i)(3)(B). The court must initially determine whether the party seeking attorney's fees is the prevailing party.  *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010).  *See District of Columbia v. West*, 699 F. Supp. 2d 273, 278 (D.D.C. 2010) (in considering a claim for IDEA attorney's fees, it is the court "not the hearing officer in the administrative proceeding, which determines prevailing party status.") (quoting *D.C. v. Straus*, 607 F. Supp. 2d 180, 183 (D.D.C. 2009)).

A party is generally considered to be the prevailing party if he succeeds "on any significant issue in litigation which achieves some of the benefit [ ] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278-279 (1st Cir. 1978)).  The Supreme Court has indicated that the term "prevailing party" only includes plaintiffs who "secure a judgment on the merits or a court-ordered consent decree." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't Health & Human Resources*, 532 U.S. 598, 600 (2001). The Supreme Court therefore rejected the "catalyst theory" whereby a plaintiff would be a prevailing party if the lawsuit brought about the desired result through a voluntary change in the defendant's conduct.  *Id.* at 605.  The Supreme Court instead determined that a prevailing party must obtain a "material alteration of the legal relationship of the parties." *Id.* at 604 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)).  The standards in *Buckhannon* apply to administrative hearings under the IDEA even though the relief granted is administrative as opposed to judicial.  *Abarca v. District of Columbia*, Civil Action No. 06-1254, 2007 WL 1794101 *2 n.1 (D.D.C. June 19, 2007).

"[T]he term prevailing party [is] a legal term of art that requires more than achieving the desired outcome; the party seeking fees must also have been awarded some relief by the court." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (internal quotations and citations omitted).  In *Straus*, the Court of Appeals considered the following three factors to determine prevailing party status: 1) alteration of the legal relationship between the parties; 2) a favorable judgment for the party requesting fees; and 3) a judicial pronouncement accompanied by judicial relief.  *Id.* at 901.

**2. Fee Requests**

The plaintiff has the burden of establishing the reasonableness of any fee requests.  *See In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995).  *See also Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) ("[A] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates.") "An award of attorneys' fees is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case."  *Smith v. Roher*, 954 F. Supp. 359, 364 (D.D.C. 1997) (citing *Hensley v. Eckerhard*, 461 U.S. 424, 433 (1983)); *see also Blum v. Stenson*, 465 U.S. 886, 888 (1984).

The IDEA states that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. §1415(i)(3)(C).  To demonstrate a reasonable hourly rate, the fee applicant must show: (1) an attorney's usual billing practices; (2) counsel's skill, experience and reputation; (3) the prevailing market rates in the community.  *Covington*, 57 F.3d at 1107 (citations omitted.)  The determination of a "'market rate' for the services of a lawyer is inherently difficult" and is decided by the court in its discretion.  *Blum*, 465 U.S. at 896 n.11. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence . . . that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Id.*  Additionally, an attorney's usual billing rate may be considered the "reasonable rate" if it accords with the rates prevailing in the community for similar services by lawyers possessing similar skill, experience and reputation.  *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993).

### III. ANALYSIS

### A. Plaintiff's Prevailing Party Status

Although the Hearing Officer concluded that Plaintiff sustained her burden of proof on the issue that DCPS denied the student a FAPE by failing to provide the student with an appropriate placement/location of services, Defendant argues that the Plaintiff is not a prevailing party.  (Cross-Motion at 6-7.)  More specifically, Defendant asserts that "[t]he hearing officer [merely] issued an order that the DCPS hold an IEP meeting, and imposed *no specific requirements* on the changes made to the student's educational program or placement." (Cross-Motion at 7 (emphasis added)).  Defendant's assertion is misleading at best.  As previously noted, the Hearing Officer ordered, *inter alia*, that the District "review and revise the student's IEP and determine an appropriate educational placement and location of services *other than School B* [and] the team shall also *consider and determine whether the student should simply be provided a day school placement or be referred for and provided a residential placement . . . .*" (HOD at 8 (emphasis added)). There is no question that Plaintiff prevailed at the administrative level and is thus entitled to an award of reasonable attorney's fees.

In this case, however, Plaintiff did not prevail on both issues that were considered by the Hearing Officer; more specifically, she did not prevail on her claim that "the student's IEP *while he attended* School A was not reasonably calculated to confer educational benefit to the student." (HOD at 8 (emphasis added)).  It does not appear from the time sheets submitted by Plaintiff's counsel that any of counsel's time charges are specifically attributable to this [non-prevailing] issue as opposed to the [prevailing] issue regarding a review of the student's psychological evaluation, revision of his IEP and determination of an appropriate educational placement and

- 8 -

location of services.[4] In fairness to the District, however, the Court will reduce the Plaintiff's

overall fee award by ten percent to account for the fact that Plaintiff did not prevail on this issue

at the due process hearing.

### B. Fees Incurred after the Offer of Settlement

The District contends that the trial court should not award fees or costs that were incurred

subsequent to Defendant's written offer of settlement because the relief obtained by Plaintiffs

was not more favorable than that which was offered by Defendant. (Cross-Motion at 7-10.)

Attorney's fees may not be awarded and related costs may not be reimbursed in any IDEA action

or proceeding for services performed subsequent to the time of a written offer of settlement if the

offer is timely made, it is not accepted within ten days and "the court or administrative hearing

officer finds that the relief finally obtained by the parents is not more favorable to the parents

than the offer of settlement."  20 U.S.C. §1415(i)(3)(D)(i)(I-III).

Comparing the relief granted by the Hearing Officer to Plaintiff DeLa Cruz with the relief

proposed by the District in its September 13, 2013 Offer of Settlement, this Court finds that

under both, DCPS was to hold an IEP meeting to review and revise the student's IEP.  (HOD at

8; Cross-Motion, Exh. 2 [September 13, 2013 Offer of Settlement] at 2.)[5]  The Court notes

however that the Hearing Officer's Order granting relief is more comprehensive than the Offer of

Settlement insofar as the Order also requires that the IEP team review the student's independent

comprehensive psychological evaluation, review and determine the student's disability

classification, and determine an appropriate educational placement/location of services. (HOD at

8.)  Accordingly, the Court finds that the relief proffered by DCPS was not as favorable as the

---

[4] The Court notes that Counsel's billing records (Motion, Exh. 4) are easy to decipher and
contain detailed descriptions of the work performed.
[5] The Offer of Settlement notes that the student's IEP shall be reviewed and revised "if
necessary."  (Offer of Settlement at 2.)

relief ultimately obtained by Plaintiff DeLa Cruz and therefore, Plaintiff is entitled to recover legal fees for work performed subsequent to the September 13, 2013 Offer of Settlement.

### C. Timing of the Resolution of Issues

Defendant further argues that Plaintiff's attorney fees should be reduced because Plaintiff protracted the final resolution of the issues. (Cross-Motion at 11-12.)  The District indicates that, "[a]fter a discussion about the situation at the beginning of the hearing, DCPS again offered to review evaluations, conduct an IEP meeting, and identify a school for the student to attend based on the new IEP."  (Cross-Motion at 12.)  *See* Cross-Motion, Exh. 4 [October 31, 2013 Hearing Transcript] at 6 ("DCPS has always maintained . . . , that a meeting needed to be held to review that independent evaluation and the IEP adjusted accordingly if necessary and then a determination of placement.") A review of the Hearing Transcript provides a more complete picture of what was actually proffered by the District at the start of the hearing.  *See, e.g.* Hearing Transcript at 5 ("DCPS will stipulate to the fact that it was provided with an independent comprehensive psychological evaluation [and] [t]hat evaluation does need to be reviewed by an IEP team [and] DCPS is in the process of scheduling an IEP meeting."); Hearing Transcript at 21 ("DCPS is not admitting [ ] that it's not an appropriate placement."); Hearing Transcript at 25 ("DCPS does not want to agree to a Consent Order.")  Accordingly, Defendant's allegation that Plaintiff protracted the final resolution of this case is unsupported by the record in this case.

### D. Specific Time Charges[6]

Defendant asserts that some of the work billed by Plaintiff's counsel for "scheduling, writing and reviewing emails, confirming meeting dates, [and] reviewing non-legal documents"

---

[6] Defendant initially argued that attorney's fees for "implementation" of the HOD should be denied (Cross-Motion at 16-18) but this argument was later withdrawn. (Def.'s Reply at 9.)

is clerical rather than legal.  (Cross-Motion at 18.)[7]  Plaintiff cites *In re* Olsen, 884 F.2d 1415, 1426-27 (D.C. Cir. 1989) (acknowledging that "such services are generally considered within the overhead component of a lawyer's fee.") *But see Bailey v. District of Columbia,* 839 F. Supp. 888, 891 (D.D.C. 1993) (wherein the Court determined that attorneys operating as solo practitioners should not be denied compensation just because they may lack the resources to retain junior lawyers who could handle such tasks more economically).[8]  The *Bailey* case does not however prevent an attorney billing for administrative tasks, which could be handled by a junior associate or paralegal, from adjusting his fee rates downward with regard to performance of such tasks.  Accordingly, this Court will reduce Plaintiff's overall fee award by fifteen percent to account for the fact that administrative tasks should be billed at a lower hourly rate.

### E. Delay in Payment of Attorney's Fees

In the conclusion of her Motion, Plaintiff asserts that she has been harmed "as a consequence of DCPS' deliberate delays in failing to pay attorneys' fee petitions in full on a timely basis."  (Memorandum at 7.)  Defendant contends that this assertion is a "legally unsupported fiction" because the Court has not yet made a determination of reasonable fees and thus, there has been no delay in payment. (Cross-Motion at 19.)  "Because the process of seeking discretionary fees from the Court in which Plaintiffs are engaged is the very process designed by Congress and explicitly set forth in the IDEA, the statute provides no basis for Plaintiff's argument that DCPS is required to pay attorney's invoices 'in full on a timely basis.'"  (Cross-Motion at 18-19.)  This Court agrees with the Defendant that because the Court has not yet determined reasonable attorney's fees, there can be no corresponding harm from any delay in payment.

---

[7] *See, e.g.,* billing entries for: 5/16/13 .5, .3; 6/10/13: .5, .2; 7/9/13 .2; 7/25/13 .3; 7/26/13 .2; 8/28/13 .1; 8/30/13 .1, .2; 9/21/13 .1; 9/23/13 .1; 9/25/13 .1. (Motion, Exh. 4.)
[8] Plaintiff's counsel is a solo practitioner. (Pl.'s Opposition at 21.)

### F. Reasonableness of Hourly Rates

Plaintiff offered evidence sufficient to establish her attorney's experience, skill, and reputation in IDEA matters. (Memorandum at 4-6; Motion, Exh. 6 [Declaration of Carolyn Houck, Esq.] ("Houck Decl."), Exh. 7 [Declaration of Kimberly Glassman].)[9]  Plaintiff contends that her attorney, Ms. Houck, should be compensated at a rate of $450.00 per hour for work performed. (Memorandum at 4-6; Exh. 6 [Houck Declaration].) Plaintiff's counsel utilizes the hourly rates set forth in the *Laffey* Matrix for June 1, 2013 through May 31, 2014, for attorneys with 11-19 years of experience, noting that these rates have been applied in many IDEA fee cases and are reasonable.  (Memorandum at 4-6; Motion Exh. 5 [2003-2014 *Laffey* Matrix].)

The *Laffey* Matrix was created to follow rates charged by litigators who practice complex federal litigation in the District of Columbia, which are presumptive maximum rates for such litigation.  *See Laffey v Northwest Airlines, Inc.*, 572 F. Supp. 354, 372 (D.D.C. 1983) *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984) (where the relevant legal market was "complex federal litigation").  The United States Attorney's Office for the District of Columbia updates the Matrix annually to reflect increases in the local Consumer Price Index. *Rooths v. District of Columbia,* 802 F. Supp. 2d 56, 61 (D.D.C. 2011).  Applying *Laffey* rates would provide Ms. Houck, an attorney who has practiced exclusively in the field of special education since 1997, (Motion Exh. 6 ¶3), with $445.00 per hour for work performed from June 1, 2012 through May 31, 2013, and $450.00 per hour for work from June 1, 2013 through

---

[9] Ms. Glassman is an attorney who practices in D.C. and "routinely seeks legal fees from the [DCPS]" and is "familiar with the rates charged and the interpretation of the IDEA in particular." (Glassman Declaration at ¶¶1-2.)

December 11, 2013 for Plaintiff DeLa Cruz. (Motion Exh. 4 [Counsel's billing records], Motion

Exh. 5.)[10]

      Defendant opposes the use of the *Laffey* Matrix for calculating hourly rates and argues

that "[g]iven that virtually all IDEA fees in this community are paid directly by the District of

Columbia, the District maintains that market rate in this community is the rate that the District is

ordered to pay in the majority of cases filed in this jurisdiction, which is 75% of the *Laffey* rate."

Cross-Motion at 13 (*see* string cite in footnote 3). Plaintiff responds by citing to cases from this

Court where *Laffey* rates were found "presumptively reasonable."  (Pl.'s Reply at 16 (citations

omitted)).

      While the Court agrees that *Laffey* rates may be used as a starting point, federal courts do

not automatically have to award *Laffey* rates but instead they may look at the complexity of the

case and use their discretion to determine whether such rates are warranted.  *See Brighthaupt v.*

*D.C.*, Civil Action No. 13-1294, 2014 WL 1365506 at *2 (D.D.C.  April 2, 2014) (recognizing

that *Laffey* rates may be used as "an appropriate starting point for determining rates of

reimbursement for attorneys who challenge the decisions of the DCPS.")  Where issues are

complex, the full *Laffey* rates have been awarded by some judges in this Court. *See, e.g., A.S. v.*

*District of Columbia*, 842 F. Supp. 2d 40, 48-49 (D.D.C. 2012) (involving a four day hearing,

one hundred and five proposed exhibits, and ten witnesses); *Bucher v. D.C.*, 777 F. Supp.2d 69,

74 (D.D.C. 2011) (a four day hearing, forty-two proposed exhibits and nine witnesses for

plaintiff, including five experts).

      In contrast, where the issues are not complex, insofar as there is no pre-hearing

discovery, no lengthy argument, and few, if any, motions, some judges in this Court have

---

[10] Plaintiffs' counsel charged $450.00 per hour for all work done on the case despite the fact that the *Laffey M*atrix provides a rate of $445.00/hour for the 9.5 hours billed between May 1, 2013 and May 30, 2013. (Motion, Exhs. 4 & 5.)

awarded reduced *Laffey* Matrix rates.  *See Brighthaupt*, 2014 WL 1365506 at *3 (finding that

none of the three cases involved issues that were complex but instead that they proceeded in a

"fairly routine fashion").  *See also McAllister v. D.C.*, No. 11-CIV-2173 (RC), 2014 WL 901512

at *9 (D.D.C. March 6, 2014) (finding *Laffey* Matrix rates unwarranted because the hearings at

issue lacked complexity; there were few or no witnesses, limited contested issues and in one

case, a default judgment was entered due to defense counsel's failure to appear); *Wright v. D.C.,*

No. 11-CIV-384, 2012 WL 79015 at *4 (D.D.C. Jan. 11, 2012) (involving a one day long routine

administrative proceeding where the time counsel spent preparing for the hearing was nominal);

*Rooths v. D.C.*, 802 F.Supp.2d at 63 (wherein the trial court noted that "Like most IDEA cases,

the claim on which the plaintiff prevailed in this action involved very simple facts, little

evidence, and no novel or complicated questions of law.")

      The District asserts that because it had already conceded that "an IEP was needed to

review the student's recent evaluation, review his IEP, and determine an appropriate school [,]"

this case was "less complex than an ordinary IDEA administrative hearing." (Cross-Motion at

15.) Plaintiff argues that the administrative proceedings were complex insofar as "counsel was

required to have knowledge of the psychological and academic issues involved in the minor

Plaintiff's disabilities, understand the procedural rules and substantive legal issued, and have the

ability to present all of this information in a cohesive and logical manner."  (Pl.'s Reply at 15.)

What Plaintiff has described is the basic level of competency that any litigator needs to possess.

Plaintiff further asserts that proceedings in the instant case were not "open and shut" or "run of

the mill."  (Pl's. Reply at 15.)  Plaintiff however fails to point to anything specific that

demonstrates the complexity of the administrative proceedings. Accordingly, the Court looks to

the record in this case to determine the complexity of Plaintiff's administrative proceedings.

Plaintiff filed her Due Process Complaint on August 30, 2013, alleging a denial of FAPE on grounds that the District failed to perform necessary evaluations for I.D., failed to develop an appropriate IEP on February 11, 2013, and failed to provide an appropriate placement for SY 2013/14.  (Motion, Exh. 1 [Due Process Complaint].) A resolution meeting was held on September 13, 2013, but the parties did not resolve any of the issues in the case.  (Motion, Exh. 2 [HOD] at 3.) The Hearing Officer held pre-hearing conferences on September 24, 2013 and October 16, 2013.  (*Id.*)  The Due Process hearing was held on October 31, 2013.  (Cross-Motion, Exh. 4 [Hearing Transcript].)  The Hearing Officer noted that "[b]y the date of the due process hearing[,] the parties had not yet convened an IEP meeting to review the student's recent evaluation and review the student's IEP and school placement."  (HOD at 3.)

The Hearing Officer resolved the case by issuing a Hearing Officer's Determination (Motion, Exh. 2) on November 17, 2013.  The Hearing Officer found that the District denied the student a FAPE by failing to provide an appropriate placement/location of services for SY 2013-2014, but he did not find that the February 11, 2013 IEP was inappropriate.  (Exh. 2 at 7-8.)[11] At the October 31, 2013 Due Process Hearing, Plaintiff had 22 documents that were admitted into the record without objection and the District had 10 documents, and the four witnesses were: Plaintiff [I.D.'s mother], Mr. James Connors (Community Based Intervention worker for the family), Dr. Natasha Nelson (whose position was not identified), and Mr. James Robinson (Special Education Coordinator and LEA representative at Eastern Senior High School [School B]). (Cross- Motion, Exh. 4 at 3.)  The HOD in this case does not support Plaintiff's sweeping statements that this litigation was complicated.  Nor do the billing records indicate that counsel

---

[11] The Hearing Officer noted that "Petitioner obtained DCPS funding for a comprehensive psychological evaluation that was conducted in August 2013" and the "evaluator recommended the student have an educational placement in a therapeutic school . . . ."  (Exh. 2 at 5.)

had to address any legal issues that were out of the ordinary or particularly time-consuming when preparing for the Due Process Hearing.[12]

The Court does not dispute that Ms. Houck's knowledge of IDEA law, experience, and her understanding of the procedural aspects of administrative hearings helped her to obtain a favorable decision for her clients. Like *Brighthaupt* and *Rooths*, *supra.*, however, no evidence exists that the DeLa Cruz hearing presented a novel legal issue or was significantly more complex than most IDEA hearings.

The Court finds that this is a straightforward non-complex case seeking IDEA legal fees where the hourly billing rates should be calculated as three-quarters of the *Laffey* rates. Ms. Houck's rate is thus reduced to $333.75 per hour for hours through May 31, 2013, and $337.50 per hour thereafter. Plaintiff's counsel billed for 2.5 hours of travel time by charging 50% of her hourly rate (Motion, Exh. 4). *See Bucher v. D.C.*, 777 F.Supp.2d 69, 77 (D.D.C. 2011)) (explaining that in this Circuit, travel time is compensated at half of the attorney's rate). Counsel's hourly rate for travel should be reduced to $168.75 per hour, which is consistent with the aforementioned hourly rate reduction to 75% of *Laffey* rates.

### G. Costs

Plaintiff DeLa Cruz requests reimbursement of costs in the amount of $18.00 for parking and $181.65 for copying 1,211 pages at fifteen cents per page. (Motion, Exh. 4.) Defendant does not contest Plaintiff's copying costs but contends that costs not permitted by 28 U.S.C. §1920 [regarding taxation of costs by a court] should be denied. (Cross-Motion at 19-20.) The Court finds that charge for parking should be reimbursed at cost, and copying charges reimbursed at fifteen cents per page, with total costs being awarded in the amount of $199.65.

---

[12] Plaintiff's counsel did have to spend a significant amount of time trying to find a school for I.D. to attend, but this a logistical issue as opposed to a legal issue.

## IV. CALCULATION OF FEES

For the reasons stated above, Plaintiff's Motion for Summary Judgment [15] is granted in part and denied in part and Defendant's Cross-Motion for Summary Judgment [16] is granted in part and denied in part.  In this case, Plaintiff's counsel Ms. Houck documented 138.3 hours at $450.00/hour.  (Motion Exh. 4.) Taking into account the adjustment of counsel's hourly rates from $445.00/hour to $450.00/hour, to correspond to the *Laffey* Matrix rate change on June 1, 2013, the reduction in hourly rates corresponding to this Court's application of 75% of *Laffey* Matrix rates, the other reductions imposed by this Court, and the reimbursement of travel time at half of the [adjusted] hourly rate, Plaintiff DeLa Cruz should be awarded fees as follows:

- 9.5 hours at $333.75/hour equals $3,170.63

- 128.8 hours at $337.50/hour equals $43,470.00

- The total of $46,640.63 is reduced by 25% (10% for non-prevailing party issues and 15% for administrative-type tasks), which equals $34.980.47, plus

- 2.5 hours [for travel] at $168.75/hour

Plaintiff DeLa Cruz is entitled to attorney's fees totaling $35,402.35.


Date: March 2, 2015                      _____/s/_____
                                         ALAN KAY
                                         UNITED STATES MAGISTRATE JUDGE